Versión para imprimir



EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Pueblo de Puerto Rico<br><br>Recurrido<br><br>v.<br><br>Ana Contreras Severino<br><br>Peticionaria | Certiorari<br><br>2012 TSPR 91<br><br>185 DPR _____ |

Número del Caso: CC-2010-1085

Fecha: 29 de mayo de 2012

Tribunal de Apelaciones:

      Región Judicial de Carolina

Abogados de la Parte Peticionaria:

      Lcdo. Joel Román Román
      Lcda. Tanaira Padilla Rodríguez

Oficina del Procurador General:

      Lcda. Zaira Girón Anadón
      Subprocuradora General

      Lcda. Luana Ramos Carrión
      Procuradora General Auxiliar

Materia: Procedimiento Criminal – Agencia con jurisdicción para atender solicitudes de bonificación de sentencia.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Pueblo de Puerto Rico
       Recurrido

                                    CC-2010-1085

          v.


Ana Contreras Severino
       Peticionaria


Opinión del Tribunal emitida por la Jueza Asociada señora FIOL MATTA


En San Juan, Puerto Rico, a 29 de mayo de 2012.

En este caso nos corresponde determinar el foro adecuado para canalizar una solicitud relacionada a la bonificación a la que tiene derecho una persona convicta de delito por el tiempo que estuvo privada de su libertad antes de comenzar a cumplir su sentencia en una institución correccional en Puerto Rico. La peticionaria fue convicta en Puerto Rico, tras ser detenida fuera de nuestra jurisdicción en cumplimiento de una orden de arresto emitida por un tribunal puertorriqueño y reclama que se abone a su sentencia el tiempo durante el cual estuvo privada

de su libertad antes de su extradición, a pesar de haber retado el proceso de extradición. Alega, además, que se le debe abonar a la sentencia el tiempo que la peticionaria estuvo detenida fuera del Estado Libre Asociado, en espera de extradición, porque evadió nuestra jurisdicción mientras se ventilaba el juicio en su contra y se le arrestó después de dictada la sentencia.

I

Dado que ninguno de los foros inferiores hizo determinaciones de hechos ni llevaron a cabo vistas evidenciarias, reproducimos las alegaciones de la señora Contreras Severino según constan en sus alegatos y en los documentos complementarios que presentó en su recurso ante este Tribunal.[1]

El 21 de agosto de 2000, la peticionaria no compareció al acto de lectura de acusación por violaciones al artículo 4.01 de la Ley de Sustancias Controladas. Por consiguiente, se emitió una orden de arresto en su contra.[2] En virtud de esa orden, el 26 de noviembre de 2001 la señora Contreras Severino fue detenida en el

---

[1] Muchas de estas alegaciones se basan en documentos judiciales anejados a la petición de *cetriorari*. Incluso, algunas de éstas han sido aceptadas por el Estado en su alegato ante este Tribunal. Otras, sin embargo, son aún meras alegaciones de la peticionaria. Iremos identificando las fuentes de las alegaciones en el transcurso de la Opinión.

[2] Minuta del Tribunal de Primera Instancia del 21 de agosto de 2000; Apéndice petición de *certiorari*, a la pág. 153.

estado de Nueva York.[3] La peticionaria retó su extradición, lo que requirió que el Estado presentara una demanda formal ante las autoridades neoyorquinas. Finalmente, fue extraditada a Puerto Rico el 19 de marzo de 2002.[4] Es decir, estuvo recluida durante 114 días en Nueva York por razón de la orden de arresto emitida en Puerto Rico. Al llegar a la isla, fue ingresada en prisión.[5] Posteriormente, el Tribunal de Primera Instancia decretó la liberación de la peticionaria ya que llevaba más de seis meses sumariada, en violación a la disposición constitucional sobre detención preventiva.[6] Para llegar a esa conclusión, el foro primario sumó el tiempo que la

---

[3] Petición de *certiorari*, a la pág. 3.

[4] Resolución del Tribunal de Apelaciones, a las págs. 1-2.

[5] La Minuta del Tribunal de Primera Instancia del 2 de abril de 2002 identificaba a la señora Contreras Severino como "confinada"; Apéndice petición de *certiorari*, a la pág. 154. Igual ocurrió en la Minuta del 6 de junio de 2002 durante la vista de *habeas corpus*.

[6] Minuta del Tribunal de Primera Instancia del 6 de junio de 2002; Apéndice petición de *certiorari*, a las págs. 156-158. De dicha Minuta se desprenden varios asuntos importantes. En primer lugar, la defensa hizo constar que "en el expediente de Corrección no surgen los documentos de cuando su clienta fue arrestada en el estado de [Nueva] York en virtud de una orden de arresto como prófuga de la justicia en el caso de drogas". *Id*, a la pág. 1; Apéndice petición de *certiorari*, a la pág. 156. En segundo lugar, surge que el propio foro de instancia indagó sobre cuándo se ingresó a la peticionaria producto de la orden de arresto en el caso de drogas. Finalmente, se indica que la defensa presentó documentos del estado de Nueva York que indican que la señora Contreras Severino fue arrestada el 20 de noviembre de 2001 e ingresada ese mismo día en dicha jurisdicción. *Id*, a la pág. 2. Ante ese panorama, el Tribunal de Primera Instancia declaró con lugar la petición de *habeas corpus*.

señora Contreras Severino estuvo encarcelada en Nueva York y el periodo durante el cual estuvo ingresada en Puerto Rico, producto de los mismos cargos.[7]

El 3 de julio de 2002, mientras se ventilaba el juicio en su contra, el foro primario emitió una orden de arresto contra la peticionaria declarándola prófuga por haber abandonado la jurisdicción. El 27 de agosto de 2002 se dictó una sentencia en ausencia, condenando a la señora Contreras Severino a 30 años de cárcel por violación al artículo 4.01 de la Ley de Sustancias Controladas,[8] es decir, el mismo cargo por el cual se le arrestó el 26 de noviembre de 2001. El 30 de noviembre de 2002, la peticionaria fue arrestada en el estado de la Florida y fue extraditada a Puerto Rico el 16 de diciembre de ese año. Por tanto, estuvo 17 días ingresada en Florida, producto de la orden de arresto del 3 de julio y la sentencia en ausencia que fue dictada el 27 de agosto. Una vez regresó a Puerto Rico, la señora Contreras Severino fue ingresada a prisión para cumplir con la sentencia impuesta.

Mientras la peticionaria estaba confinada bajo la custodia de la Administración de Corrección en la Escuela Industrial para Mujeres, una institución penal en Vega Alta, dicha agencia le notificó su liquidación de

---

[7] Petición de *certiorari*, a la pág. 3.

[8] Sentencia en Ausencia del 27 de abril de 2002; Apéndice petición de *certiorari*, a la pág. 159.

sentencia. En dicho documento, titulado "Hoja de Control", se informó a la señora Contreras Severino las fechas en las que cumpliría su sentencia y podría ser liberada. Según la peticionaria, la liquidación "no refleja como tiempo cumplido de la sentencia los periodos que estuvo detenida en espera de extradición".[9]

El 20 de mayo de 2010, la peticionaria presentó ante la sala del Tribunal de Primera Instancia que la había sentenciado anteriormente una "Moción para que se ordene acreditar preventiva en espera de extradición", basando sus alegaciones en el artículo 42 del Código Penal de 1974, entonces vigente, y la Regla 182 de Procedimiento Criminal. En particular, solicitó al tribunal que ordenara al ELA, por conducto de la Administración de Corrección, que le acreditara los 114 días que estuvo detenida en Nueva York y los 17 días que estuvo detenida en Florida, y que se abonaran o descontaran del cumplimiento de su sentencia.[10] En esencia, alegó que dichos periodos constituyen términos de cárcel cumplidos a causa de

---

[9] Petición de *certiorari*, a la pág. 4. En su petición, la peticionaria incluye un documento titulado "Hoja de Control Sobre Liquidación de Sentencias" emitido por el Departamento de Corrección y Rehabilitación. El mismo tiene fecha del 10-3-10 y lo firma un técnico de récord. La "Hoja" pormenoriza la sentencia que debe cumplir la señora Contreras Severino e incluye varias anotaciones relacionadas con bonificaciones. Cabe señalar que el documento no hace referencia alguna al tiempo durante el cual la peticionaria estuvo detenida en Nueva York o en Florida. Apéndice petición de *certiorari*, a la pág. 124.

[10] Petición de *certiorari*, a la pág. 4.

órdenes de arresto relacionadas con el cargo por el que fue convicta eventualmente y cumple sentencia y, por ende, deberían abonarse a la misma.

Según la peticionaria, para que proceda el abono ordenado por el artículo 42 del Código Penal de 1974 y la Regla 182 de Procedimiento Criminal, se requieren tres elementos, entiéndase, que la persona haya sido privada de su libertad, se le acuse y, posteriormente, sea ingresada a prisión en cumplimiento de sentencia por los mismos hechos. Según ella, el Estado, en este caso por vía de la Administración de Corrección, está obligado a abonar los días que caigan dentro del término aludido, sin margen alguno de discreción. Finalmente, la señora Contreras Severino alega que le corresponde al tribunal sentenciador, y no a la agencia administrativa, atender su reclamo y corregir la certificación de liquidación de sentencia.

El 24 de febrero de 2010 el Tribunal de Primera Instancia resolvió la "Moción para que se ordene acreditar preventiva en espera de extradición" con un "[a]téngase a sentencia del 27 de agosto de 2002".[11] Inconforme, la peticionaria presentó una "Segunda moción para que se ordene acreditar tiempo cumplido en espera de extradición". Nuevamente, el tribunal de instancia denegó la solicitud, manifestando: "Aténgase a normas del

---

[11] Orden del Tribunal de Primera Instancia del 1 de marzo de 2010; Apéndice petición de *certiorari*, a la pág. 164.

Departamento de Corrección y Rehabilitación de Puerto Rico, haga el planteamiento ante la Junta de Libertad Bajo Palabra. No somos la Jueza Sentenciadora. Sentencia final y firme".[12]

La señora Contreras Severino recurrió al Tribunal de Apelaciones y ese foro denegó el auto de *certiorari*, exponiendo en su resolución que "[l]e compete a la Junta de Libertad Bajo Palabra, en su día, realizar el abono que corresponde en derecho a favor de la peticionaria, una vez se haga el reclamo correspondiente".[13] Para el tribunal apelativo, se trataba de una solicitud para enmendar la sentencia del 27 de agosto de 2002, que era final y firme. Por eso, entendió que carecía de jurisdicción para entrar en los méritos del caso mientras no hubiera alguna determinación de la Junta y se solicitara la revisión judicial. En todo caso, según el tribunal, lo que correspondería sería computar el abono sobre "los años totales de la sentencia, es decir, de los treinta (30) años, y no como [la peticionaria] pretende que se haga un descuento directo de la sentencia y así se enmiende".[14]

En su recurso ante este foro, la señora Contreras Severino aduce que el foro apelativo erró porque la Asamblea Legislativa no delegó a la Junta de Libertad Bajo

---

[12] Orden del Tribunal de Primera Instancia del 13 de julio de 2010; Apéndice petición de *certiorari*, a la pág. 170.

[13] Resolución del Tribunal de Apelaciones, a la pág. 2; Apéndice petición de *certiorari*, a la pág. 129.

[14] *Id.*

Palabra la facultad, deber o jurisdicción para computar o acreditar el tiempo durante el cual una persona está detenida preventivamente. La peticionaria sostiene que la agencia encargada del cómputo y manejo de los términos es la Administración de Corrección. Como ejemplo de ello señala que la "Hoja de Control de Liquidación de Sentencia" fue emitida por dicha agencia. No obstante, insiste que el foro con jurisdicción para adjudicar su reclamo particular es el Tribunal de Primera Instancia ya que lo que ella solicita no es una enmienda a la sentencia original, como concluyó el Tribunal de Apelaciones, sino que el foro primario haga cumplir su sentencia ordenándole a la Administración de Corrección que le acredite el tiempo cumplido. La peticionaria insiste que, de sostenerse lo contrario, se le estaría añadiendo tiempo a su sentencia.[15]

Sobre el abono del tiempo durante el cual estuvo detenida en Nueva York y en Florida, la peticionaria sostiene, en primer lugar, que el artículo 42 del Código Penal de 1974 y la Regla 182 de Procedimiento Criminal ordenan abonar a la sentencia todo el tiempo de privación de libertad antes de que recaiga sentencia firme,

_____

[15] En particular, la señora Contreras Severino alega que: "El ordenamiento jurídico obliga a proceder a acreditarle dicho término de tiempo [abono por detención preventiva], y es el Tribunal sentenciador el que está obligado a velar por el fiel cumplimiento de la sentencia impuesta y las reglas de procedimiento criminal". Petición de *certiorari*, a la pág. 11.

requiriéndose tan solo que la detención responda a una
orden de arresto emitida por un tribunal puertorriqueño y
que la persona sea sentenciada por los mismos hechos que
motivaron la orden de arresto original. Aduce, además, que
esa disposición no distingue entre la detención en una
institución correccional de Puerto Rico o, como en su
caso, una que esté fuera de la jurisdicción, siempre y
cuando se cumplan los requisitos identificados
previamente. Tampoco hace diferencia el que la persona
arrestada fuera de la jurisdicción rete su extradición y,
por tanto, se extienda su detención bajo la custodia de la
autoridad extranjera.[16] Finalmente, alega que el tiempo
que estuvo detenida en Florida, como consecuencia de la

---

[16] La señora Contreras Severino incluyó en el Apéndice de
su petición de *certiorari* dos documentos pertinentes a
esta controversia. El primero es una carta de la Sra.
Minerva Ramos Guevara, Fiscal Auxiliar de la División de
Extradiciones del Departamento de Justicia, a la Sra.
Nilda Rivera, Técnica de Récord de la Escuela Industrial
para Mujeres, indicándole que "[l]a demora en [el]
traslado [de la peticionaria] hacia Puerto Rico
corresponde a su deseo de impugnar el procedimiento, por
lo que este término no debe considerar [*sic*] como
Detención Preventiva". Apéndice petición de *certiorari*, a
la pág. 125. El segundo documento es una carta firmada por
la misma Fiscal Ramos Guevara dirigida a otra Técnica de
Récord Penal Viviana Rivera Rivera. Esta segunda carta
versa sobre otro confinado, de nombre Jack Muller Rivera,
y aparenta reconocer como detención preventiva abonable el
tiempo que éste estuvo en espera de extradición. Apéndice
petición de *certiorari*, a la pág. 174. Para la
peticionaria, esto demuestra que el Estado únicamente
abona la detención en el extranjero cuando el acusado no
reta la extradición. Según alega, ni el artículo 42 del
Código Penal de 1974 ni la Regla 182 de Procedimiento
Criminal permiten tal distinción. Además, de que no se le
puede penalizar por ejercer su derecho legítimo a retar
una extradición.

orden de arresto emitida luego de que abandonara la jurisdicción, también cumple con los requisitos del artículo 42 del Código Penal de 1974 y la Regla 182 de Procedimiento Criminal.

En su comparecencia, el Procurador General coincide con la peticionaria en que la Junta de Libertad Bajo Palabra no es el foro con jurisdicción para atender la presente controversia. No obstante, insiste en que le corresponde a la Administración de Corrección, y no al Tribunal de Primera Instancia, adjudicar sus alegaciones.[17] Por tanto, la señora Contreras Severino debe presentar una solicitud de remedio administrativo ante la agencia y esperar a que ésta tome una decisión final y, si le es adversa, solicitar la revisión judicial.

Por otra parte, el Procurador General no disputa directamente la mayoría de los planteamientos de derecho de la peticionaria. Más bien, se limita a argumentar que este Tribunal no tiene un expediente completo ante su consideración y no debe adjudicar la controversia en los méritos únicamente a base de las alegaciones de la señora Contreras Severino. Propone entonces que se devuelva el caso al foro primario para que la peticionaria pruebe sus alegaciones.[18] Finalmente, el Procurador General hace

---

[17] Para ello enumera varios casos del Tribunal de Apelaciones en los que se llegó a la misma conclusión.
[18] En ese sentido, el Procurador General alega que la petición de la señora Contreras Severino se asemeja a una opinión consultiva. Alegato del Procurador General, a la pág. 1. De igual forma, en varias partes de su alegato, el

referencia a la discusión que se ha generado en los Estados Unidos sobre la posibilidad de que una persona acusada que reta su proceso de extradición pueda beneficiarse del abono estatutario.[19]

II

El artículo 42 del Código Penal de 1974, vigente al momento en que se dictó sentencia en este caso, disponía que "[a] la persona convicta de delito se le abonarán los términos de detención o reclusión que hubiere sufrido, en la siguiente forma: (a) el tiempo de reclusión sufrido por cualquier convicto desde su detención y hasta que la sentencia haya quedado firme, se abonará en su totalidad para el cómputo de la pena, cualquiera que sea ésta".[20] Por su parte, la Regla 182 de Procedimiento Criminal establece que "[e]l tiempo que hubiere permanecido privada de su libertad cualquier persona acusada de cometer cualquier delito público se descontará totalmente del término que deba cumplir dicha persona de ser sentenciada

---

Procurador General insiste en que hace falta devolver el caso para que se desarrolle un expediente.

[19] En su Alegato, el Procurador General hace referencia a la jurisprudencia conflictiva sobre este asunto en los tribunales estatales en los EEUU.

[20] 33 L.P.R.A. sec. 3204 (derogada). Por su parte, el artículo 75 del Código Penal de 2004 contiene una disposición idéntica. 33 L.P.R.A. sec. 4703.

por los mismos hechos por los cuales hubiere sufrido dicha privación de libertad".[21]

Según explica la profesora Dora Nevares Muñiz, el artículo 75 del Código Penal de 2004, idéntico al artículo 42 del Código de 1974, "provee para el abono de la pena de los días en que la persona estuvo recluida previo a que su sentencia fuere firme o bajo alguna medida de restricción de libertad anulada o revocada".[22] Este artículo tiene como propósito "cubrir el tiempo en que el convicto está detenido hasta que la sentencia es firme".[23] En cuanto a la Regla 182 de Procedimiento Criminal, el Informe de las Reglas de Procedimiento Penal del Secretariado de la Conferencia Judicial y Notarial de 2008 sugiere que "debe verse en conjunto con el artículo 75(a) del Código Penal [de 2004] que contiene una disposición análoga".[24] Como

---

[21] 34 L.P.R.A. Ap. II R. 182. Por otra parte, la Regla 183 de Procedimiento Criminal dispone que "[e]l tiempo que hubiere permanecido privada de su libertad cualquier persona mientras estuviere pendiente un recurso de apelación incoado contra la sentencia se descontará totalmente del término de prisión que deba cumplir dicha persona como consecuencia de dicha sentencia al ser ésta confirmada o modificada". 34 L.P.R.A. Ap. II R. 183.

[22] Dora Nevares Muñiz, "Derecho Penal Puertorriqueño: Parte General", 5ta Ed. 2005, a la pág. 388.

[23] Dora Nevares Muñiz, "Nuevo Código Penal de Puerto Rico", 2005, a la pág. 108. La autora hizo el mismo análisis bajo el artículo 42 del Código Penal de 1974. Véase Dora Nevares Muñiz, "Código Penal de Puerto Rico", 2000, a la pág. 82.

[24] Informe de Reglas de Procedimiento Penal, Secretariado de la Conferencia Judicial y Notarial, 2008, a la pág. 642.

explica el Informe, para que apliquen estas disposiciones del Código Penal y las Reglas de Procedimiento Criminal "[se] impone como requisito que la persona sea sentenciada por los mismos hechos por los que fue privada de su libertad e ingresada en una institución correccional. Si la persona convicta es sentenciada por hechos independientes o delitos ajenos a aquéllos por los que fue restringida de su libertad, no aplicaría la Regla [182 o el artículo correspondiente del Código Penal] y, por ende, no puede abonársele ningún término a su sentencia".[25]

De lo anterior se desprende que para que una persona tenga derecho a la bonificación establecida por el Código Penal y la Regla 182 de Procedimiento Criminal hace falta que sea privada de su libertad, sea acusada y, posteriormente, sea ingresada para cumplir una sentencia por los mismos hechos por los que se le detuvo en primera instancia.

III

¿Cuál es el foro apropiado para atender situaciones como la de autos? El Tribunal de Apelaciones resolvió que la jurisdicción corresponde a la Junta de Libertad Bajo Palabra. La señora Contreras Severino entiende que el foro debe ser el Tribunal de Primera Instancia, dado que es el responsable de hacer cumplir las Reglas de Procedimiento

---

[25] *Id*. Igual ocurre con la Regla 183 de Procedimiento Criminal. *Id*, a la pág. 643.

Criminal. El Procurador General sostiene que se trata de una responsabilidad delegada a la Administración de Corrección, en primera instancia, y a los tribunales posteriormente, en revisión judicial.

Mediante la Ley Núm. 118 de 22 de julio de 1974, según enmendada, se creó la Junta de Libertad Bajo Palabra.[26] El artículo 3 establece las facultades de esta agencia, que incluyen el poder para otorgar el privilegio de libertad bajo palabra, revocar el mismo y asesorar al Gobernador sobre solicitudes de clemencia ejecutiva, entre otros.[27] En cuanto al poder de reglamentación de la Junta, la ley lo limita a lo necesario "para implantar este capítulo".[28] No hay nada en la Ley Núm. 118 que faculte a la Junta de Libertad Bajo Palabra para acreditar bonificación alguna a la sentencia de un confinado. Coincidimos con la señora Contreras Severino y el Procurador General en que el Tribunal de Apelaciones erró al resolver que la Junta era la agencia facultada para atender el reclamo de la peticionaria.

La Regla 185 de Procedimiento Criminal es el mecanismo para la corrección de sentencias penales cuando estas sean ilegales o tengan algún error de forma. En ambos casos, la corrección se puede hacer "en cualquier

---

[26] 4 L.P.R.A. sec. 1501 *et seq.*

[27] 4 L.P.R.A. sec. 1503.

[28] *Id.*

momento".[29] Como explica el "Informe sobre las Reglas" elaborado por el Comité de Procedimiento Criminal del Secretariado de la Conferencia Judicial y Notarial de 1978, dado que "una sentencia dictada contrario a lo que dispone la ley es nula e inexistente", la Regla 185 permite corregir la misma en cualquier momento y sin límite alguno de tiempo.[30]

Por otra parte, la Regla 192.1 de Procedimiento Criminal establece que cualquier persona que se encuentre detenida en virtud de una sentencia dictada por cualquier sala del Tribunal de Primera Instancia y que alegue el derecho a ser puesta en libertad por cualquiera de las razones dispuestas en la misma Regla, podrá solicitarle en cualquier momento a la sala del tribunal que impuso la sentencia que la anule, deje sin efecto o la corrija.[31] Las razones establecidas por la Regla 192.1 son: que la sentencia fue impuesta en violación a la Constitución o las leyes del Estado Libre Asociado de Puerto Rico o la Constitución y las leyes de los Estados Unidos; que el tribunal no tenía jurisdicción para imponer dicha sentencia; que la sentencia impuesta excede la pena

---

[29] 34 L.P.R.A. Ap. II R. 185.

[30] Informe sobre las Reglas, Comité de Procedimiento Criminal, Secretariado de la Conferencia Judicial y Notarial de 1978, a la pág. 238, citando a Pueblo v. Lozano Díaz, 88 D.P.R. 834 (1963). Véase además Pueblo v. Casanova Cruz, 117 D.P.R. 784, 786 (1986).

[31] 34 L.P.R.A. AP. II R. 192.1.

prescrita por la ley o que la sentencia está sujeta a ataque colateral por cualquier motivo.[32] Si el tribunal determina que la sentencia fue dictada sin jurisdicción, que la sentencia impuesta excede la pena prescrita por la ley, que por cualquier motivo está sujeta a ataque colateral o que ha habido tal violación a los derechos constitucionales del solicitante que la hace susceptible de ser atacada colateralmente, el tribunal anulará y dejará sin efecto la sentencia y ordenará que el peticionario sea puesto en libertad o dictará una nueva sentencia u ordenará un nuevo juicio, según proceda.[33] De ordinario, la Regla 192.1 es el mecanismo que debe emplearse antes de presentar un recurso de *habeas corpus* y puede presentarse en cualquier momento, incluso después que la sentencia impugnada haya advenido final y firme.[34] Esta Regla "provee uno de los procedimientos que ofrece nuestro ordenamiento para cuestionar la validez de una sentencia dictada".[35] En una impugnación bajo las Reglas 185(a) y 192.1, se analizará la sustancia de la sentencia para determinar su legalidad y validez, mientras que una

---

[32] *Id.*

[33] *Id* Regla 192.1(b).

[34] *Véase* Pueblo v. Román Mártir, 169 D.P.R. 809 (2007); Quiles v. Del Valle, 167 D.P.R. 458, 469-470 (2006); U.P.R. v. Merced Rosa, 102 D.P.R 512 (1974).

[35] (Énfasis suplido) Pueblo v. Ruiz Torres, 127 D.P.R. 612, 614 (1990, Sentencia).

moción al amparo la Regla 185(b) requiere que el tribunal determine si adolece de algún error de forma.

La Administración de Corrección tiene como propósito "administrar el sistema correccional integrado e [implantar] enfoques para estructurar formas más eficaces de tratamiento individualizado estableciendo o ampliando programas de rehabilitación en la comunidad".[36] Los poderes y facultades delegadas a la Administración de Corrección son amplios e incluyen el poder de reglamentación.[37] Entre estas facultades está el "[a]dquirir la custodia legal de todo sumariado y sentenciado a confinamiento por orden de un tribunal competente".[38] De igual forma, la Ley Núm. 116 confiere a la agencia la responsabilidad de administrar los esquemas de bonificaciones, entre éstos las bonificaciones por buena conducta, trabajo y estudios.[39] En particular, el estatuto dispone que la Administración establecerá "el procedimiento que [se utilizará] para la concesión, disfrute, suspensión, rebaja y cancelación de los abonos que garantiza el debido proceso de ley y para orientar a

---

[36] Ley Orgánica de la Administración de Corrección, Ley Núm. 116 de 22 de julio de 1974, según enmendada; 4 L.P.R.A. sec. 1111.

[37] 4 L.P.R.A. sec. 1112.

[38] 4 L.P.R.A. sec. 1112(ñ).

[39] Véanse, por ejemplo, las bonificaciones por buena conducta, trabajo y estudios. Subcapítulo VIII de la Ley Orgánica de la Administración de Corrección. 4 L.P.R.A. 1161 et seq.

los confinados sobre los alcances del sistema de bonificación".[40] La Ley Orgánica también le confiere a la agencia el poder para "adoptar reglamentos referentes a la concesión, cancelación y restitución de abonos por buena conducta, trabajo y estudios o servicio excepcionalmente meritorio o de suma importancia, de acuerdo con este capítulo y las normas dispuestas en el nuevo Código Penal del Estado Libre Asociado de Puerto Rico [de 2004]".[41] Como veremos, el "Manual de Procedimiento de la División de Documentos y Récords Penales" de la Administración de Corrección incluye directrices internas de la agencia para el abono por detención preventiva.[42]

El 23 de enero de 2012 el Departamento de Corrección y Rehabilitación aprobó el Reglamento Núm. 8145, "Reglamento para atender las solicitudes de remedios administrativos radicados por los miembros de la población correccional".[43] Este Reglamento tiene como objetivo "evitar o reducir la radicación de pleitos en los

---

[40] 4 L.P.R.A. sec. 1163(e).

[41] (Énfasis suplido) 4 L.P.R.A. sec. 1165, añadido por virtud de la Ley Núm. 315 de 15 de septiembre de 2004.

[42] *Véase*, además, el Reglamento derogado Núm. 1864 de 5 de noviembre de 1974 sobre bonificaciones.

[43] Este Reglamento es la versión más reciente en una serie de Reglamentos que atienden el procedimiento para la canalización de solicitudes de remedios administrativos por parte de la población correccional. Véase, por ejemplo, Reglamento Núm. 7641 de 19 de diciembre de 2008. Cabe destacar que este Reglamento está sujeto a la Ley de Procedimiento Administrativo Uniforme.

tribunales de justicia".[44] La Regla III dispone que "[e]ste Reglamento será aplicable a todos los miembros de la población correccional recluidos en todas las instituciones o facilidades correccionales bajo la jurisdicción del Departamento de Corrección y Rehabilitación".[45] La "Solicitud de Remedio" se define en el Reglamento como un "[r]ecurso que presenta un miembro de la población correccional por escrito, de una situación que afecte su calidad de vida y seguridad, relacionado con su confinamiento".[46] A su amparo, la agencia tiene facultad "para atender toda Solicitud de Remedio radicada por los miembros de la población correccional en cualquier institución o facilidad correccional donde se encuentre[n] extinguiendo sentencia y que esté relacionada directa o indirectamente con: (a) Actos o incidentes que afecten personalmente al miembro de la población correccional en su bienestar físico, mental, en su seguridad personal o en su plan institucional; [y] (b) [c]ualquier incidente o reclamación comprendida bajo las disposiciones de este Reglamento…".[47] Por otra parte, no habrá jurisdicción en

---

[44] Reglamento Núm. 8145, a las págs. 1-2.

[45] *Id*, a la pág. 4.

[46] *Id*, a la pág. 7.

[47] (Énfasis suplido) *Id*, Regla VI.

"[c]ualquier otra situación que no cumpla con las disposiciones del presente Reglamento".[48]

Finalmente, en cuanto al procedimiento para presentar remedios administrativos al amparo del Reglamento, este establece que se podrán depositar las solicitudes en los buzones instalados en cada institución correccional tras haber llenado un "Formulario de Solicitud de Remedio Administrativo" en un término no mayor de 15 días después de conocer el incidente, salvo que medie justa causa.[49] En estos casos, la petición será evaluada por un funcionario correccional y será resuelta finalmente por un Coordinador. Si el miembro de la población correccional está inconforme con la determinación del Coordinador, podrá presentar un recurso de revisión judicial al Tribunal de Apelaciones en un periodo de 30 días, según dispuesto en la LPAU.[50]

Para facilitar la labor de los técnicos penales que tienen a su cargo los expedientes de la población confinada en Puerto Rico, la Administración de Corrección aprobó un "Manual de Procedimiento de la División de Documentos y Récords Penales".[51] Este Manual establece los

---

[48] *Id*, Regla VI(g).

[49] *Id*, Regla XII.

[50] 3 L.P.R.A. sec. 2172; *Id*, Regla XV.

[51] Se trata de un reglamento no-legislativo firmado el 12 de julio de 2007 por el entonces Secretario del Departamento de Corrección y Rehabilitación Miguel A. Pereira Castillo. El Manual dispone que, "para efectos del

procedimientos administrativos internos de la agencia para manejar los expedientes de los confinados y fue actualizado en el 2007 para cumplir con el nuevo Código Penal y las Reglas de Procedimiento Criminal.[52]

Según dispone el Manual, los oficiales de récords en las instituciones penales tienen la obligación de establecer y conservar de forma individualizada el expediente criminal físico y electrónico de los miembros de la comunidad penal.[53] De igual forma, tienen la responsabilidad de recibir las sentencias, interpretarlas y computarlas según corresponda.[54] Entre los documentos que emite la Administración de Corrección está la "Hoja de Control sobre Liquidación de Sentencia".[55] Los oficiales de récords también tienen la responsabilidad de emitir un "Certificado de Días Cumplidos en Prisión Preventiva" y "Certificado de Reclusión Preventiva".[56]

---

presente Manual donde lea Administración de Corrección se podrá entender Departamento de Corrección y Rehabilitación y viceversa", a la pág. ii. No se trata del primer Manual aprobado por la agencia para esos fines. En su parte introductoria, el documento hace referencia al "Manual de Procedimientos para la Unidad de Récords" de 1976.

[52] Manual de Procedimiento de la División de Documentos y Récords Penales, a la pág. i.

[53] *Id*, a la pág. 8.

[54] *Id*, a la pág. 9.

[55] Existen tres formularios de este documento, según sea el caso. *Id*, a la pág. 12. El documento que presentó la señora Contreras Severino corresponde a uno de esos formularios (AC-PIP-1231.b).

[56] *Id*, a la pág. 13.

El Manual establece los abonos por detención o términos de reclusión en su Capítulo VIII, titulado "Disposiciones Legales Aplicables a las Oficinas de Récord", en el que se hace una referencia directa tanto a la Regla 182 de Procedimiento Criminal como al artículo 42 del Código Penal de 1974.[57] Por su parte, el Capítulo IX, titulado "Manejo de Liquidación de Sentencia", atiende el proceso para calcular el tiempo que un confinado tiene que cumplir para poder extinguir su sentencia, incluyendo el cálculo de las diferentes bonificaciones aplicables. En particular, el Manual establece:

> La liquidación de sentencia es el proceso matemático en el cual: [s]e analizan e interpretan todas las sentencias emitidas por un Tribunal competente contra el miembro de la población correccional. Mediante este proceso aplican las leyes y reglas de procedimiento criminal; [s]e determina la fecha tentativa en que el miembro de la población correccional cumple su sentencia, y cualifica para ser considerado a los beneficios de la libertad bajo palabra u otros programas.[58]

El Manual también hace referencia a los "pasos a seguir" en la preparación de la Hoja de Liquidación. Entre éstos se encuentran recibir las sentencias de las secretarías de los tribunales, examinar las mismas, verificar si hay casos pendientes y "verificar si aplica

---

[57] *Id*, a las págs. 98 y 113.

[58] *Id*, a la pág. 115.

la [detención] preventiva".[59] El Manual orienta al oficial de récords sobre cómo anotar esta bonificación en la Hoja de Liquidación. Una vez el oficial ha elaborado la Hoja, ésta debe ser aprobada por un Supervisor de Récords; finalmente, se le hace llegar al confinado. En cuanto al asunto particular de la bonificación por detención preventiva, el Manual establece que ésta corresponde al "[t]iempo que el acusado permaneció privado de su libertad … El tiempo de reclusión sufrido por cualquier convicto <u>desde su detención y hasta que la sentencia haya quedado firme, se abonará en su totalidad para el cumplimiento de la pena, cualquiera que ésta sea"</u>.[60]

A diferencia de otras jurisdicciones,[61] en Puerto Rico las salas sentenciadoras del Tribunal de Primera Instancia no tienen la obligación de incluir en sus sentencias el término que debe abonarse por la detención preventiva. Claro está, <u>nada impide que lo hagan</u>. De ser

---

[59] *Id*, a la pág. 117. En cuanto a ésta, el Manual dispone que "[l]a preventiva se toma desde la fecha de admisión al sistema correccional y no de la Orden de Ingreso; ésta se saca de día a día". *Id*, a la pág. 118.

[60] (Énfasis suplido) *Id*, a la pág. 134.

[61] *Véase*, por ejemplo, <u>In re Watson</u>, 19 Cal. 3d 646 (1977, California). Como se desprende de este caso, en el estado de California es responsabilidad de la sala sentenciadora del tribunal de primera instancia incluir en la misma sentencia las bonificaciones por detención preventiva, incluyendo aquellas detenciones que se dan en el extranjero mientras se dilucida el proceso de extradición. *Id*, a la pág. 648. Ese deber del tribunal surge del Código Penal estatal. Por otra parte, le corresponde a la agencia correccional añadir la bonificación por el tiempo que la persona esté presa desde la sentencia hasta su ingreso en la institución en la que cumplirá la pena.

ese el caso, la bonificación sería parte integral de la sentencia. Ahora bien, ¿qué sucede cuando la sala sentenciadora no hace referencia a la bonificación establecida por la Regla 182 de Procedimiento Criminal? En ese caso, ¿debe la persona convicta presentar una moción al amparo de la Regla 182(a), 182(b) o 192.1 de Procedimiento Criminal o, por el contrario, debe agotar los remedios administrativos y presentar una solicitud a la Administración de Corrección? Reconocemos que la Regla 182 es un cuerpo normativo dirigido principalmente a los tribunales y que el Reglamento Núm. 8145 no establece con claridad si incluye este tipo de solicitud. Sin embargo, la amplitud de los poderes que la Asamblea Legislativa ha delegado a la Administración de Corrección, así como la indudable pericia de dicha agencia para atender las reclamaciones de la población correccional del país, nos llevan a concluir que es esta la que debe resolver la reclamación inicial sobre la omisión de incluir la bonificación por detención preventiva en la hoja de liquidación de sentencia. Si la persona confinada está inconforme con la decisión final de la agencia, siempre podrá recurrir a los tribunales a través del recurso de revisión judicial. No se trata de que los tribunales carezcan de jurisdicción para atender reclamaciones como esta ni que la Asamblea Legislativa haya otorgado jurisdicción exclusiva a la Administración de Corrección. Más bien, reconocemos que dicha agencia está en mejor

posición para atender solicitudes de esta naturaleza provenientes de la población correccional.

IV

En el caso de autos, la señora Contreras Severino alega que fue arrestada en Nueva York producto de una orden emitida por un tribunal puertorriqueño por violaciones a la Ley de Sustancias Controladas, que ejerció su derecho a retar la extradición y que estuvo 114 días detenida en dicho estado hasta que fue finalmente extraditada a Puerto Rico e ingresada a prisión. Posteriormente, fue convicta por los mismos hechos que motivaron la orden de arresto original. Como correctamente señala el Procurador General, ningún foro primario ha adjudicado en los méritos estas alegaciones de la señora Contreras Severino. Según hemos explicado, le corresponde hacerlo a la Administración de Corrección.

Por lo anteriormente expuesto, aunque por fundamentos distintos, se confirma la Resolución del Tribunal de Apelaciones.

Se dictará sentencia de conformidad.


Liana Fiol Matta
Jueza Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Pueblo de Puerto Rico
    Recurrido

         v.                                    *Certiorari*
                          CC-2010-1085

Ana Contreras Severino
    Peticionaria


*SENTENCIA*


En San Juan, Puerto Rico a 29 de mayo de 2012.

        Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integrante de la presente Sentencia, se confirma la Resolución del Tribunal de Apelaciones.

        Lo acordó y manda el Tribunal y certifica la Secretaria del Tribunal Supremo.


                          Aida Ileana Oquendo Graulau
                          Secretaria del Tribunal Supremo